Filed 4/26/22  P. v. Jimenez CA4/2
(opinion on transfer from Supreme Court)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073455 |
| v. | (Super.Ct.Nos. FWV19000409 & FWV19000410) |
| JESSE JIMENEZ et al., | |
| Defendants and Appellants. | OPINION ON TRANSFER |

APPEAL from the Superior Court of San Bernardino County.  Dan W. Detienne, Judge.  Affirmed in part, vacated in part, and remanded with directions.

James M. Kehoe, under appointment by the Court of Appeal, for Defendant and Appellant Jesse Jimenez.

Tanya Dellaca, under appointment by the Court of Appeal, for Defendant and Appellant Nicholas Mora.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel, Paige B. Hazard, and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

1

Following a bench trial, defendants Jesse Jimenez and Nicolas Mora were convicted of actively participating in a criminal street gang (Pen. Code, § 186.22, subd. (a) (§ 186.22(a)), and Mora was convicted of first degree burglary (Pen. Code, § 459; unlabeled statutory citations are to this code). Defendants admitted that they had suffered a prior serious felony conviction (§ 667, subd. (a)(1)) and a prior strike conviction (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)), and Jimenez admitted that he had served a prior prison term within five years (§ 667.5, subd. (b)). Jimenez was sentenced to 12 years in state prison, and Mora was sentenced to 18 years and four months in state prison.

On appeal, Jimenez and Mora challenged the sufficiency of the evidence supporting their convictions for actively participating in a criminal street gang. Defendants also argued and the People conceded that a prior prison term enhancement imposed on Jimenez should be stricken and that Mora's sentence for the gang offense should be stayed under section 654. In a prior unpublished opinion, we agreed with the parties on the latter two arguments and otherwise affirmed the judgment, concluding that sufficient evidence supported the substantive gang offenses. (*People v. Jimenez* (Sept. 27, 2021, E073455) [nonpub. opn.].)

The California Supreme Court granted review and transferred the matter back to this court with instructions to vacate our decision and to reconsider the matter in light of recently enacted Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Assembly Bill 333) (Stats. 2021, ch. 699), which amended the gang offense statute. (*People v. Jimenez* (Dec. 15, 2021, S271625) [2021 Cal. Lexis 8514].) We vacated our opinion and

requested supplemental briefing from the parties, which they filed.  We agree with the parties that Assembly Bill 333 requires reversal of the gang offense convictions.  We consequently vacate those convictions and remand for further proceedings.  We otherwise affirm.

BACKGROUND

On the night of September 30 to October 1, 2018, several individuals broke into Garcia's Wood Work, a company that makes wooden pallets in Fontana, California.  The intrusion awakened an employee who lived at the work site, and the intruders bound, gagged, beat, and threatened to kill him.  He was later treated for head injuries and a broken finger.  The intruders also took his wallet and cell phone and the keys to his pickup truck.

After the intruders left, the employee freed himself, walked to a neighboring property, and had the neighbor call the owner of Garcia's Wood Work.  The employee then returned to the pallet yard.  N.G., the manager of Garcia's Wood Work, arrived shortly thereafter.

N.G. found that the gate to the pallet yard had been rammed open, and two trucks, each loaded with 704 pallets, were missing.  Each pallet was worth six to eight dollars, so the value of the cargo on the two trucks was over $8,000.

N.G. sent several family members to other local pallet yards to attempt to find the missing trucks and pallets.  In particular, N.G. called his brother-in-law at about 2:10 a.m. and sent him to a pallet yard in Riverside, California, operated by N.G.'s uncle, Dolores

3

Garcia, because "there was issues" between N.G.'s father (the owner of Garcia's Wood Work) and Garcia. The brother-in-law saw one of the stolen trucks at the Riverside pallet yard at about 3:00 a.m., and the truck was not then carrying any cargo. The brother-in-law called N.G. and told him that the truck was at the Riverside yard. Then, on his way home from the Riverside yard, the brother-in-law saw the other stolen truck, also empty, parked on a side street.

When sheriff's deputies arrived at Garcia's Wood Work, N.G. conveyed the information he had received from his brother-in-law. The deputies then went to the Riverside pallet yard to investigate. While they were there speaking with N.G.'s uncle, a vehicle pulled into the driveway of the yard. Jimenez was driving, and there were three other individuals in the car. When one of the deputies walked toward the car, Jimenez got out and walked rapidly away. The deputy detained Jimenez and searched the area for the rest of the car's occupants, who had scattered. The deputy found Mora hiding among the pallets in the yard and arrested him. Two more individuals were arrested after being found hiding in the yard.

Surveillance footage from Garcia's Wood Work showed that one of the intruders wore a mask and the other wore a dark-colored bandana covering his face. A deputy searched Mora's pockets and found a blue bandana and a pair of black latex gloves that were identical to a black latex glove found outside the trailer of the employee who was attacked at Garcia's Wood Work. A blue bandana also was found inside of the vehicle in which Jimenez and Mora arrived at the Riverside yard.

In interviews with law enforcement and testimony at trial, Garcia gave several different descriptions of his role in the break-in and theft of the pallets from Garcia's Wood Work. Garcia initially claimed that he did not know anything about the stolen trucks and had no issues with his brother, the owner of Garcia's Wood Work. He then admitted that he had lied when he said he knew nothing about the stolen trucks, and he said that he came to his pallet yard because an employee called him and told him two trucks had arrived at the yard, so "he stopped by to check." He then admitted that was a lie as well. Garcia then said that he had "screwed up and made a mistake of buying stolen pallets," but "he did not know the pallets belonged to his brother until after he bought them." He said that he was at his pallet yard when the trucks arrived; one of the trucks was driven by Mora, and Garcia opened the gate to let the trucks in and then helped unload the pallets. Garcia claimed that Mora, whom Garcia has known since Mora "was little," offered to sell him the stolen pallets, and Garcia agreed to buy them.

At trial, Garcia testified with immunity and changed his story again. He claimed that around 3:00 a.m. on October 1, 2018, he received a phone call from an unidentified man offering to sell him pallets. He then went to his pallet yard around 3:20 a.m., and there were already two trucks waiting outside the yard. The trucks were accompanied by two people Garcia had never seen before. Garcia and one of his employees unloaded the pallets from the trucks. Garcia and the seller(s) never agreed on a price, and once all of the pallets were unloaded, the two unknown individuals left in the trucks without getting paid. The trial court did not find Garcia's testimony credible.

5

A search of a detached garage at Jimenez's residence in San Bernardino, California revealed papers bearing numerous drawings of clowns and one with the initials "H T," as well as a T-shirt with the word "Pomona" on it. According to someone else who resided at the property, Jimenez lived in the garage. The garage contained correspondence addressed to Jimenez. The T-shirt was not new and appeared a "bit old"; the law enforcement officer who found it did not verify whether it was Jimenez's size.

Mora resided at a home in Fontana, California with three other people. A bedroom identified by another resident as Mora's contained a paper bearing the words "Happy Town cartoon" in "[t]agging style writing" and "Happy Town Pomona."

Jimenez had several tattoos: "Happy Town Pomona" on his arm, clown faces on his shoulder, and "Happy Town Pomona" on his back. Mora also had tattoos: a clown and the words "Just clowning" on his back, and "Mora" with the letters "H and T" within it.

Officer Franzesco Sacca testified as an expert on the Happy Town gang, which he described as a criminal street gang with approximately 100 members located in the city of Pomona, California. Happy Town's primary activities include committing robberies and carjacking, selling narcotics, and illegally possessing firearms. It is not uncommon for gang members to live outside of the gang's territory or to commit crimes outside of that territory.

Sacca testified about two predicate offenses committed by Happy Town gang members. For the first predicate offense, Sacca testified that a self-admitted Happy

Town member was convicted in September 2016 of carrying a loaded firearm in violation of section 25850, subdivision (a). On the day the offense was committed, the Happy Town member who committed the offense was associating with several other Happy Town gang members just outside of Happy Town's territory. For the second predicate offense, Sacca testified that another self-admitted Happy Town gang member was convicted in May 2017 of being a felon in possession of a firearm in violation of section 29800. The offense was committed in Happy Town's territory at a location where three Happy Town gang members were located and six firearms were recovered.

In addition, the prosecution admitted the records of conviction of prior convictions of Jimenez and Mora. In March 2017, Jimenez pled guilty to attempted possession in January 2017 of a firearm by a prohibited person. (§§ 664, 29800, subd. (a)(1).) In May 2017, Mora pled guilty to unlawful possession in March 2017 of methamphetamine for the purpose of sale in violation of Health & Safety Code section 11378. Neither defendant was charged with a gang enhancement for those offenses or with actively participating in a gang.

Happy Town's common signs and symbols include: "Happy Town Pomona," "HTP" and varied combinations of those letters, clowns, and smiley faces. Happy Town members identify themselves by the color blue, and they wear attire associated with the Houston Astros baseball team. Every time Sacca searched a Happy Town gang member's residence he found Happy Town gang-related indicia, including photographs

with other gang members and drawings of Happy Town's common signs and symbols, including the letters "HTP," smiley faces, and clowns.

Sacca had never met or seen Jimenez or Mora or heard about either of them at any law enforcement intelligence meetings about Happy Town. There were no field identification cards for either Jimenez or Mora, but the police department does not normally have such cards for every member of a gang. Not all law enforcement officers fill out field identification cards when encountering suspected gang members. After Sacca investigated this case, he did not notice Mora's photograph in any Happy Town-related social media posts for other cases he was investigating. Sacca did not search social media for any postings by Mora.

On the basis of the police reports and testimony in this case, Sacca opined that Jimenez and Mora were active participants in Happy Town. Sacca based his opinion on Jimenez's and Mora's tattoos, the drawings found at Jimenez's residence, the drawing found at Mora's residence, and the fact that both men were housed in general population in county jail. Sacca would not expect to find gang-related paraphernalia at a nonactive gang member's residence. Sacca did not have any knowledge about the age of Mora's tattoos, except that they were not "very recent." On social media, Happy Town gang members use the hashtag "Just Clowning."

Sacca opined that the nature of the underlying offense also tended to show that Jimenez and Mora were active Happy Town participants because the offense required "a lot of manpower," which a gang provides in the form of "trusted fellow criminals." The

8

fact that Jimenez and Mora committed the offense together also supported Sacca's belief that they were active participants in Happy Town. Sacca further testified that active participants in gangs are aware that members of the gang commit crimes and are frequently around other members of their gang.

In Sacca's experience, only active gang members would be housed in the general population of the county jail. Former gang members with gang tattoos housed in county jail would be placed in protective custody, and not the general population of the jail, because they might otherwise become targets of violence by members of their former gang. At the same time, Sacca testified that he had never worked at a jail and that inmates are typically opposed to being placed in protective custody "for any reason."

Gang members can drop out of a gang by being "jumped out" or renouncing membership while in custody. Certain crimes, such as those against children, will result in lost membership. Dropouts from a gang do not associate with active members of the gang. Some older gang members "stop and have families" at some point. Sacca did not believe that a member could separate from a gang "without being jumped out physically" while remaining in "good standing" with the gang. Sacca did not know whether Happy Town allowed older members to "age[] out" of the gang and still remain in good standing.

After hearing the parties' closing arguments, the trial court found Mora guilty of first degree burglary and both men guilty of actively participating in a gang in violation of section 186.22(a). As to the gang offenses, the court found that defendants' prior

9

convictions and the two convictions by self-admitted Happy Town members comprised the requisite predicate offenses to establish a pattern of criminal activity as defined in CALCRIM No. 1400, the instruction the court relied on for that offense.

DISCUSSION

The parties agree that Assembly Bill 333 should be applied retroactively to this case and that under the new law there is insufficient evidence to support defendants' convictions under section 186.22(a). We concur with the parties.

Among other things, section 186.22 criminalizes active participation in a "criminal street gang." (§ 186.22(a); *People v. E.H.* (2022) 75 Cal.App.5th 467, 476 (*E.H.*).) Section 186.22(a) now penalizes "actively participat[ing] in a criminal street gang with knowledge that its members engage in, or have engaged in, a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in felonious criminal conduct by members of that gang . . . ."

As this court recently explained, Assembly Bill 333 amended section 186.22 to impose new requirements for the offense of active gang participation. (*E.H.*, *supra*, 75 Cal.App.5th at p. 477.) As relevant to the substantive gang offense in section 186.22(a), Assembly Bill 333 "amended the definitions of 'criminal street gang' and 'pattern of criminal gang activity.'" (*E.H.*, at p. 477.) "Previously, the statute defined a 'criminal street gang,' as 'any ongoing organization, association, or group of three or more persons . . . whose members *individually or collectively* engage in, or have engaged in, a pattern of criminal gang activity.' (Former § 186.22, subd. (f), italics added.) Assembly

10

Bill 333 narrowed the definition to 'an ongoing, organized association or group of three or more persons . . . whose members *collectively* engage in, or have engaged in, a pattern of criminal gang activity.' (Assem. Bill 333, § 3, revised § 186.22, subd. (f), italics added.)" (*E.H.*, at p. 477.)

"As for what constitutes a 'pattern of criminal gang activity,' previously the prosecution needed to prove 'only that those associated with the gang had committed at least two offenses from a list of predicate crimes on separate occasions within three years of one another.'" (*E.H.*, *supra*, 75 Cal.App.5th at p. 477; *People v. Sek* (2022) 74 Cal.App.5th 657, 665 (*Sek*).) Assembly Bill 333 made the following changes to this definition: (1) "the predicate offenses now must have been committed by two or more 'members' of the gang (as opposed to any persons)" (*E.H.*, at p. 477; § 186.22, subd. (e)(1)); (2) "the predicate offenses must be proven to have '*commonly* benefited a criminal street gang'" (*E.H.*, at p. 477; § 186.22, subd. (e)(1)), and the common benefit must be "more than reputational" (§ 186.22, subd. (e)(1)); (3) "the last predicate offense must have occurred within three years of the date of the currently charged offense" (*E.H.*, at p. 477; § 186.22, subd. (e)(1)); (4) "the list of qualifying predicate offenses has been reduced" (*E.H.*, at pp. 477-478; § 186.22, subd. (e)(1)); and (5) "the currently charged offense no longer counts as a predicate offense" (*E.H.*, at p. 478; § 186.22, subd. (e)(2)).

In addition to those substantive changes to section 186.22, Assembly Bill 333 added section 1109, which establishes that for a defendant charged with violating section 186.22(a), that count "shall be tried separately from all other counts that do not otherwise

require gang evidence as an element of the crime." (§ 1109, subd. (b); *E.H.*, *supra*, 75 Cal.App.5th at p. 478.)

Assembly Bill 333 does not contain an effective date. (Stats. 2021, ch. 699.) It was enacted as nonurgency legislation in a regular legislative session in 2021 (Stats. 2021, ch. 699) and consequently became effective on January 1, 2022. (See Cal. Const., art. IV, § 8, subd. (c)(1); *People v. Henderson* (1980) 107 Cal.App.3d 475, 488.) When Assembly Bill 333 became effective, the Supreme Court had already transferred this case back to this court. The prior opinion had already been vacated, and we were awaiting supplemental briefing from the parties. The judgments of conviction therefore were not final. (See *People v. Vieira* (2005) 35 Cal.4th 264, 306.) Assembly Bill 333 applies retroactively to defendants like Mora and Jimenez whose judgments of conviction were not final when Assembly Bill 333 became effective. (*E.H.*, *supra*, 75 Cal.App.5th at p. 478.)

The parties agree that reversal is required because Assembly Bill 333 added elements to section 186.22(a) that the factfinder at their trial was not required to find. To determine whether reversal is required in this case, we apply the harmlessness standard articulated in *Chapman v. California* (1967) 386 U.S. 18, 24. (*E.H.*, *supra*, 75 Cal.App.5th at p. 479; *Sek*, *supra*, 74 Cal.App.5th at p. 668.) Under that standard, reversal is required unless it appears beyond a reasonable doubt that the failure to require proof of the new elements at defendants' trial did not contribute to the findings of guilt. (*E.H.*, at p. 479.)

12

Here, we cannot conclude that the failure to require proof of the additional elements under amended section 186.22(a) was harmless beyond a reasonable doubt. First, there is no evidence that any of the predicate offenses commonly benefitted Happy Town or that the benefit was more than reputational. Second, as to the predicate offenses committed by Jimenez and Mora, there is no evidence that defendants were gang members when those offenses were committed. There is no evidence about when either of them joined Happy Town, and the predicate offenses were committed more than one year before the underlying robbery in this case. Moreover, neither defendant was charged with a gang enhancement related to those offenses or with active participation in a gang in connection with the offenses. Third, there is no evidence that Happy Town constituted a criminal street gang whose "members collectively engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22, subd. (f).) There is no evidence that the predicate offenses were committed by Happy Town gang members acting collectively. Nor did Sacca testify that the Happy Town gang members engaged in the criminal enterprises comprising the gang's primary activities through collective action.

As we explained in *E.H.*, "[t]he proper remedy for this type of failure of proof— where newly required elements were 'never tried' to the [factfinder]—is to remand and give the People an opportunity to retry the affected charges." (*E.H.*, *supra*, 75 Cal.App.5th at p. 480.) We thus vacate defendants' convictions under section 186.22(a) and remand to the trial court for further proceedings consistent with this opinion.

13

Defendants' remaining arguments about sentencing are rendered moot by the reversal of these convictions, so we need not and do not address them.

## DISPOSITION

We vacate defendants' convictions under section 186.22(a).  We remand to the trial court to (1) give the People the opportunity to retry the offenses under the new law as amended by Assembly Bill 333, and (2) impose appropriate dispositions should the People elect not to retry these offenses.  In all other respects, the judgments are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
                                                                                                        J.

We concur:

MILLER
            Acting P. J.
CODRINGTON
                        J.